UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEARBROOK, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) ) | No. 08 C 3276 |
| v. | ) ) | |
| ROOFLIFTERS, LLC, a Florida limited liability company, ROOFLIFTERS HOLDING CORPORATION, a Florida corporation, ROOFLIFTERS EQUIPMENT, LLC, a Florida limited liability company, ROOFLIFTERS GENERAL CONTRACTING, LLC, a Flordia limited liability company, and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff, Clearbrook, filed this action alleging that it received an unsolicited fax from defendants and thereby defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. Before the Court is plaintiff's motion to certify a class of plaintiffs who also, allegedly, received unsolicited faxes from defendants. For the reasons set forth below, the motion is denied without prejudice [dkt. 51].

**BACKGROUND**

Defendants, Rooflifters LLC, various Rooflifters subsidiaries, and ten unnamed defendants (John Does 1-10), are engaged in the service of lifting roofs to provide extra ceiling space for

businesses. Plaintiff, Clearbrook, alleges that on February 14, 2008 it received an unsolicited fax advertisement from defendant and that the advertisement lacked an adequate opt-out notification, which the TCPA requires.[1] Plaintiff further alleges that discovery has revealed that defendants purchased 61,366 fax numbers from Unleashed List Services.[2] From this list, 21,547 are U.S. persons or businesses.[3] Defendants then contracted with Profax, a fax broadcaster.[4] It is alleged that Profax sent 15,503 faxes on February 14, 2008 and 26,471 faxes on February 15, 2008 on behalf of defendants.[5] Plaintiff claims over 15,000 of these faxes were sent to U.S. fax numbers. Plaintiff maintains that this mass fax operation was used to send the same advertisement that it received.

## CLASS CERTIFICATION LEGAL STANDARD

In order for a putative class to be certified, the plaintiff bears the burden of meeting all four requirements of Federal Rule of Civil Procedure 23(a) and one subsection of Rule 23(b).[6] The Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy of representation.[7] When evaluating whether these requirements have been satisfied, this Court is not limited to the pleadings.[8] Instead, we "make whatever factual and legal inquiries are necessary."[9] Furthermore, if class certification issues and the merits of the case overlap, "then the judge must make a preliminary inquiry into the merits."[10] Plaintiff must also satisfy one of the requirements of Rule 23(b). In this

---

[1] Amended Complaint ¶¶ 15, 18, 22, 26.
[2] Plaintiff's Motion for Class Certification ¶ 10.
[3] Due to a protective order put in place, plaintiff states this list cannot be made available to the Court at this time.
[4] Plaintiff's Motion for Class Certification ¶ 11.
[5] Plaintiff's Motion for Class Certification ¶ 12.
[6] Fed. R. Civ. P. 23; *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).
[7] Fed. R. Civ. P. 23(a).
[8] *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001).
[9] *Id.* at 676.
[10] *Id.*

case, plaintiff wishes to proceed under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[11]

**DISCUSSION**

A short background of the legal basis for the claims asserted here is helpful. The TCPA prohibits individuals and businesses from sending unsolicited fax advertisements.[12] However, if the sender of the fax has an "established business relationship" with the recipient, then the sender is permitted to send the fax advertisement.[13] When sending a fax under an "established business relationship," the sender must provide a notification with the fax advertisement advising the recipient of his or her right to opt-out of future faxes.[14] The regulations adopted by the Federal Communications Commission ("FCC") also require solicited fax advertisements, or fax advertisements "sent to a recipient that has provided prior express invitation or permission," to be accompanied with an opt-out notification.[15] The statute provides a private right of action that permits a plaintiff to seek an injunction preventing further violations of the act and to recover actual monetary loss or $500, whichever is greater.[16] Plaintiff in this case seeks statutory damages and an injunction against defendants from committing future violations.[17]

Plaintiff proposes the following class definition:

---

[11]Fed. R. Civ. P. 23(b)(3).
[12]47 U.S.C. § 227(b)(1)(C).
[13]47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3)(i).
[14]47 C.F.R. § 64.1200(a)(3)(iii).
[15]47 C.F.R. § 64.1200(a)(3)(iv).
[16]U.S.C. § 227(b)(3).
[17]Amended Complaint ¶¶ 31, 33.

> (a) all persons located within the U.S. (b) who, on or after a date four years prior to the filing of this action, and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendants promoting their goods or services for sale (d) and who were not provided an "opt out" notice that complies with federal law.

Defendants object to this class definition, arguing that it fails Rule 23(a)'s commonality and typicality requirements. Defendants also contend that common issues do not predominate over individual issues, as required by Rule 23(b)(3). Additionally, defendants argue that the class definition is unworkable because potential class members would not know whether they belong in the class.

## A. Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)'s first requirement is that the class be "so numerous that joinder of all members is impracticable."[18] Plaintiff has included a sales invoice from Unleashed List Services for the purchase of 61,366 fax numbers, 21,547 of which are U.S. persons or entities.[19] Plaintiff also presents two invoices from Profax, which show 15,503 faxes transmitted on February 14, 2008 and 26,471 faxes transmitted on February 15, 2008.[20] Defendants do not argue the numerosity requirement. Because the evidence is uncontroverted that defendants obtained more than 60,000 fax numbers and contracted with Profax to send over 41,000 faxes, more than 15,000 of which were U.S. numbers, the Court agrees that the number of class members is so numerous as to make joinder impracticable.

---

[18] Fed. R. Civ. P. 23(a).
[19] Plaintiff's Motion for Class Certification, Exh. B.
[20] Plaintiff's Motion for Class Certification, Exhs. D & E.

## 2. Commonality

Next, Rule 23(a) requires that there be "questions of law or fact common to the class."[21] To determine whether this requirement is satisfied, courts look for "[a] common nucleus of operative fact."[22] As was stated in *Keele v. Wexler*, "[c]ommon nuclei of fact are typically manifest where . . .the defendants have engaged in standardized conduct towards members of the proposed class."[23] Here, defendants allegedly engaged in the standardized conduct of sending mass identical faxes advertising their services to fax numbers purchased from a third party. It is difficult to imagine an activity that could be more standardized. Furthermore, all claims arise under the same statute.

However, defendants argue that the issue of whether an individual recipient may have consented to receive a fax precludes a finding that the putative class meets the commonality requirement. For support, defendants point to *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.,* where the district court denied class certification in a TCPA case.[24] In that opinion, Judge Gettlemen acknowledged that other courts have denied class certification in TCPA cases because the consent issue precludes a finding that the putative class meets the commonality and/or typicality requirement.[25] However, the court in *Saf-T-Gard* rejected these analyses[26] and instead adopted the analysis in *Hinman v. M and M Rental Center, Inc.*[27] The Court in *Hinman* stated that the activity of advertising by fax was not a sporadic or unorganized practice.[28] Instead, the court noted that it

---

[21]Fed. R. Civ. P. 23(a)(2).
[22]*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).
[23]*Keele,* 149 F.3d at 594.
[24]251 F.R.D. 312, 316 (N.D. Ill. 2008).
[25]*Saf-T-Gard Int'l., Inc.*, 251 F.R.D. at 314 (citing *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162 (S. D. Ind. 1997); *Forman v. Data Transfer Inc.*, 164 F.R.D. 400 (E.D. Pa 1995)).
[26]251 F.R.D. at 315.
[27]545 F.Supp.2d 802 (N.D. Ill. 2008).
[28]545 F.Supp.2d 802 at 806-7.

was a well organized mass advertising tactic and, in light of this, found that consent presented a common issue, rather than an individual one.[29]

This Court also finds the analysis in *Hinman* persuasive. In this case, plaintiff has presented evidence that defendants sent tens of thousands of faxes to recipients whose fax numbers it purchased from a third party. As Judge Gettlemen stated in *Saf-T-Gard,* "[t]his reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue."[30] Although class certification was ultimately denied in *Saf-T-Gard*, the reason for denying class certification was that there was no "realistic means of identifying potential class members."[31] Specifically, the plaintiff was unable to uncover a list of numbers where class members could be identified.[32] Plaintiff in this case does not have that problem. Therefore, the Court finds questions of law and fact common to the class.

**3. Typicality**

The typicality requirement is similar to the preceding commonality requirement.[33] To meet this requirement, the plaintiff must demonstrate that "the claims or defenses of the representative party be typical of the claims or defenses of the class."[34] If the claim of the representative class member "arises from the same event or practice or course of conduct that gives rise to the claims

---

[29]*Id.*
[30]251 F.R.D. at 315.
[31]*Id.*
[32]*Id.*
[33]*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).
[34]*Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir.2009) (*quoting Williams v. Chartwell Fin. Servs.,* Ltd., 204 F.3d 748, 760 (7th Cir.2000)).

of other class members and his or her claims are based on the same legal theory," the typicality requirement has been met.[35]

In this case, each of the class members' claims arise from the sending of unsolicited faxes without the opt-out notification, as required by the TCPA. Defendants again argue that a determination of whether individual plaintiffs consented to the fax precludes a finding of typicality. However, for the same reasons stated in the previous section, defendants' argument is unavailing. The organized fashion of obtaining thousands of fax numbers through one third-party source makes the issue of consent typical to all the class members.

Defendants, however, also argue that we cannot find typicality because the class definition only proposes to include class members who were *sent* the fax. Defendants assert that a recipient must *receive* the fax, and that fax must be received on a fax machine (as opposed to a computer). As plaintiff notes, however, the TCPA requires only that an improper fax be sent. The statute does not require receipt.[36] Furthermore, the statute does not require the fax be sent to a fax machine, as opposed to a computer or some other device. The FCC has acknowledged that evolving technologies, such as computers connected to modems that receive faxes, apply to the TCPA as well.[37] Therefore, the Court finds the claims of the representative plaintiff to be typical of the claims of the class.

---

[35] *Rosario*, 963 F. 2d at 1018.
[36] 47 U.S.C. §227; *Saf-T-Gard Int'l., Inc.,* 251 F.R.D. at 315 (stating that a plaintiff "need not identify which specific fax numbers successfully received defendants' transmission from a list of numbers to which the transmission was indisputably sent.")
[37] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order adopted June 26, 2003, and released July 3, 2003, at ¶ 200, 18 FCC Rcd. 14014, 14133-34 (2003); *See also Hinman v. M and M Rental Center, Inc.,* 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009).

### 4. Adequacy of Representation

Finally, the class must be adequately represented by the plaintiff.[38] Representation will be adequate where the plaintiff (1) has a sufficient interest in the outcome to ensure zealous representation, and has no claims antagonistic to the claims of any other class members, and (2) is represented by qualified, experienced, and generally able counsel.[39] Here, defendants do not dispute that plaintiff will adequately represent the class. Furthermore, plaintiff's counsel has extensive experience conducting class actions.[40] The Court is confident that plaintiff is an adequate representative.

### B. Rule 23(b) Requirement

In addition to meeting all of the Rule 23(a) requirements, plaintiff's proposed class definition must also satisfy one of the 23(b) requirements.[41] Plaintiff in this case seeks to proceed under Rule 23(b)(3), which demands (1) that common issues predominate over individual issues and (2) that a class action is the superior method of adjudication.[42]

The Court finds common issues predominate over individual issues. Defendants allegedly sent a mass of faxes to recipients that were pulled from a list purchased from a third party. Common issues include whether the fax sent is an advertisement as defined by the TCPA, whether the inclusion on the purchased list is considered consent, and whether the defendants complied with the opt-out requirement of the TCPA. Defendants' only argument is that Rule 23(b)'s requirement

---

[38]Fed. R. Civ. P. 23(a).
[39]*Hinman*, 545 F.Supp.2d at 807.
[40]Plaintiff's Motion for Class Certification, Exh. Y.
[41]Fed. R. Civ P. 23(b).
[42]Fed. R. Civ. P. 23(b)(3).

is more rigorous than the commonality and typicality requirements of Rule 23(a). While this may be true, the Court is still confident that common issues will predominate in this action.

The Court also believes a class action is the superior method of resolution. The relative small value of the individual claims limits the likelihood that any individual actions would be brought. In the event that they were, thousands of individual claims, against the same defendant, for the same act, repeated thousands of times, is hardly an efficient use of judicial resources. Therefore, the requirement of Rule 23(b)(3) is satisfied.

**C. Class Definition**

Finally, defendants argue that the proposed class definition is unworkable because the potential class members would not know whether they are members. First, defendants argue that an individual class member would not know if a fax was sent, he or she would only know if it was received. However, as stated previously, nothing in the statute requires the fax to be received. Furthermore, other courts in this district have adopted "sent" language in class definitions.[43]

Second, defendants argue potential class members would be unaware of their membership because the definition lacks any reference to consent. Defendants' argument is that if the potential class member consented to receive faxes, he or she does not belong in the class, but there is no mention of this in the class definition. We agree with defendants in this regard. The current

---

[43]*G.M. Sign, Inc. v. Group C Comm., Inc.*, 08 C 4521, 2010 WL 744262 at *6 (N.D. Ill. Feb. 25, 2010) (defining class as "[a]ll persons that: (1) on or about December 6, 2004, December 22, 2004, January 19, 2005, February 2, 2005, February 23, 2005, April 14, 2005, or January 26, 2006; (2) were sent one (or more) faxes identifying the website www.tfrnshow.com and "The TFM Show"; and (3) had not previously consented to receiving such advertisements"); *Hinman,* 545 F.Supp.2d at 808 (defining class as "[a]ll persons who, on or after four years prior to the filing of this action, were sent, without permission, telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of defendant.").

definition includes individuals that "were sent faxes by or on behalf of defendants promoting their goods or services for sale." Under this current definition, included in the class would be individuals that consented to receive the fax. It may be possible for a plaintiff to recover damages for a solicited fax if that fax lacked the proper opt-out notification, as the FCC regulations appear to require even solicited faxes to contain an opt-out notification.[44] However, lack of permission or consent is typically a necessary element to a prima facie case for a TCPA claim.[45] Furthermore, there is little case law to support the theory that a plaintiff can proceed with a TCPA claim when he or she has explicitly consented to the fax advertisement.[46] The Court also notes that we do not believe plaintiff intends to proceed under this theory because the plaintiff stated in its motion for class certification that a common issue of fact was "whether defendant engaged in a pattern of sending *unsolicited* fax advertisements."[47] However, in its Amended Complaint, plaintiff states, "the 'opt out notice' required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship was not provided in the faxes at issue."[48] The Court is simply unclear whether the plaintiff intends to certify a class of only those that were sent unsolicited faxes, as is typical in these cases, or whether plaintiff intends to include all recipients of the fax in its class, solicited and unsolicited, and proceed under the theory that an opt-out notification was required regardless. Because the Court cannot determine plaintiff's intent, plaintiff must either submit an amended class

---

[44] 47 C.F.R. § 64.1200(a)(3)(iv).
[45] *See G.M. Sign, Inc. v. Franklin Bank. S.S.B.*, 06 C 949, 2008 WL 2410427 at *2 (N.D. Ill. June 11, 2008).
[46] *Practice Mgmt Support Servs. Inc. v. Appeal Solutions, Inc.*, 09 C 1937, 2010 WL 748170 at *4 (N.D. Ill. Mar. 01, 2010)(declining to reach whether an invited fax advertisement must include an opt-out notice under the TCPA); *see also Landsman & Funk, P.C. v. Lorman Business Center, Inc.,* 08 CV 481-bbc, 2009 WL 602019 at *4 (N.D. Ill. Mar. 09, 2009)(declining to reach defendant's argument that the FCC's regulation requiring opt-out notices for solicited faxes, 47 C.F.R. § 64.1200(a)(3)(iv), is invalid); *but see MSG Jewelers, Inc. v. C & C Quality Printing, Inc.*, Case No. 07AC-028676 at *3 (Mo.Cir. July 17, 2008)(holding "[a]ll advertising faxes - including those sent with the express permission of the recipient - must include a proper opt-out notice.").
[47] Plaintiff's Motion for Class Certification ¶ 15 (emphasis added).
[48] Amended Complaint ¶ 26.

definition or make a clearer argument that it intends to include in the class individuals that consented to receive the fax.

**CONCLUSION**

Due to the confusion with respect to plaintiff's proposed class definition, plaintiff's motion is denied without prejudice [dkt. 51]. Plaintiff is given leave to file an amended class definition on or before July 2, 2010.

**IT IS SO ORDERED**.

**ENTERED: June 28, 2010**

**Susan E. Cox**
**UNITED STATES MAGISTRATE JUDGE**